# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

WALTER WIMB HARDEMAN,

      Petitioner,

v.

                          CASE NO. 2:12-CV-15341
                          HONORABLE LAWRENCE P. ZATKOFF
                          UNITED STATES DISTRICT JUDGE

CARMEN PALMER,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Walter Wimb Hardeman ("Petitioner"), confined at the Michigan Reformatory in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316(1)(b), for which he was given a sentence of life imprisonment without parole. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's conviction arises from the August 1985 shooting death of Ramniklal Doshi, a clerk at the Northlander Inn motel. Defendant's paternal uncle, codefendant Kenneth Holyfield, worked as a security guard at the motel. After the shooting,

1

Holyfield told the police that he was talking to the victim outside the clerk's booth when someone put a gun to his back. Holyfield fled, heard gunshots, and saw the gunman leaving the motel. Holyfield provided a description of the shooter that was used to prepare a composite sketch. The description resembled defendant, but Holyfield did not identify defendant by name until 13 days later. Defendant was charged with murder, but the case was dismissed because the material witness—Holyfield—could not be located. In 2006, the case was reopened with the intent of using new technology to test hair and blood samples found at the crime scene. Mitochondrial DNA testing subsequently revealed that hairs found at the scene had a profile that was a match for defendant or a maternal relative. In 2008, defendant was again arrested and charged with murder. Holyfield was also charged as an aider and abettor. The two defendants were tried jointly, before separate juries. Holyfield testified at trial and identified defendant as the gunman. The defense argued that there was insufficient evidence that defendant was the gunman, that the scientific evidence was lacking, and that Holyfield was not credible.

*People v. Hardeman,* No. 296806, * 1 (Mich.Ct.App. July 14, 2011). Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 490 Mich. 972, 806 N.W.2d 494 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied his constitutional right to due process and a fair trial by the denial of his request to separate the trial for purposes of codefendant Holyfield's testimony, and by trial counsel's ineffectiveness in failing to make a pre-trial motion for separate trials or request the accomplice instruction.

II. Petitioner was denied his Fifth Amendment right against self-incrimination where he did not waive his *Miranda* rights and the trial court erroneously admitted his custodial statement over his objection.

III. Petitioner was denied a fair trial by the admission of the videotape of the interview with Petitioner which revealed that he was in jail on another charge, and he was prejudiced by being displayed before the jury in jail clothes.

IV. The prosecutor denied Petitioner a fair trial by presenting testimony from police officers vouching for Petitioner's guilt, and by arguing, with no basis in fact, that the mitochondrial DNA evidence was better than fingerprints, a videotape, and eyewitness testimony. [1]

---

[1] Due to the brevity of the petition for writ of habeas corpus, this Court is willing to incorporate the arguments raised in petitioner's state appellate court brief [This Court's Dkt. # 13-3] as being part of petitioner's application for writ of habeas corpus. *See e.g. Burns v. Lafler,* 328 F. Supp. 2d 711, 717, n. 2. (E.D. Mich. 2004).

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
>> (1)      resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>> (2)      resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court

decision must be consistent with the respect due state courts in our federal system." *Miller-El v.

Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for

evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the

doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)(internal quotations omitted).  "[A] state court's

3

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

**A.  Claim # 1.  The separate trial/ineffective assistance of counsel claims.**

Petitioner first claims that he was denied a fair trial when the trial judge denied his motion for complete severance of his trial from his co-defendant's trial after his co-defendant made a mid-trial decision to testify in his own defense.  In the alternative, petitioner claims that his trial counsel was ineffective for failing to file a pre-trial motion for complete severance and for failing to request an instruction on the dangers of accomplice testimony.

A criminal defendant is not entitled to a separate trial merely because he or she might have had a better chance for acquittal in a separate trial, *see Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *See Stanford v. Parker,* 266 F. 3d 442, 458 (6th Cir. 2001).  The Supreme Court, in fact, has indicated that "[M]utually antagonistic defenses are not prejudicial *per se.*" *Zafiro,* 506 U.S. at 538.  A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.  A habeas petitioner who seeks habeas relief on the basis of a state trial court's failure to sever his or her trial from his or her co-defendant's trial bears a very heavy burden. *Stanford,* 266 F. 3d at 459.  Joinder of defendants for trial is the preferred course, which creates a presumption in favor of joinder which must be overcome by the party seeking severance. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 641

4

(E.D. Mich. 2001).

Petitioner is not entitled to habeas relief on his claim. The co-defendant's testimony was relevant and admissible concerning the facts of the case and would not have been excluded had petitioner been tried separately. As the Supreme Court noted in *Zafiro*:

> A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant.

*Zafiro,* 506 U.S. at 540. Because the co-defendant's testimony would have been admissible against petitioner at a separate trial, the judge's denial of petitioner's mid-trial motion for severance after the co-defendant chose to testify did not violate petitioner's right to a fair trial. *See U.S. v. Ghazaleh,* 58 F. 3d 240, 244 (6th Cir. 1995).

Petitioner further claims that Holyfield was permitted to testify about "prior bad acts" evidence in violation of M.R.E. 404(b). It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting evidence of his prior bad acts is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F. 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due

5

process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

Petitioner further claims that counsel was ineffective for failing to file a pre-trial motion for complete severance of his trial and for failing to request an instruction on accomplice testimony. To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first claims that counsel was ineffective for failing to move for a complete severance of his case from that of his co-defendant.  The Michigan Court of Appeals ruled that the trial court did not err in refusing to grant petitioner's motion for severance, in light of the fact that the co-defendant's testimony was relevant and would have been admissible against petitioner at a separate trial. *Hardeman,* Slip. Op. at * 2-4.  This Court likewise concludes that the trial court did not err in failing to grant his motion for severance.  Counsel did, in fact, make a mid-trial motion for severance once he learned that Holyfield would testify, which was denied.  Petitioner is unable to show any prejudice from counsel's failure to file a pre-trial motion for severance because it is clear from the decisions of the trial court and the Michigan Court of Appeals that the motion would have been denied. *See McQueen v. Scroggy,* 99 F. 3d 1302, 1316 (6th Cir. 1996), *overruled on other grounds*; *Abdur'Rahman v. Bell*, 392 F. 3d 174 (6th Cir. 2004).

Petitioner next claims that he was deprived of the effective assistance of trial counsel based

6

on his trial counsel's failure to request a cautionary jury instruction on accomplice testimony.  In *Krist v Foltz*, 804 F. 2d 944, 947 (6th Cir. 1986), the Sixth Circuit regarded a criminal defense attorney's failure to request an accomplice instruction as being "insignificant" where the witness's "unsavory past and his motive for naming the defendant as his companion in crime were fully developed by counsel on cross-examination."

Petitioner's defense counsel cross-examined Holyfield and argued to the jury "that Holyfield's testimony was not credible, inconsistent, and not worthy of belief." *Hardeman,* Slip. Op. at * 5.  Because counsel brought the issues of Holyfield's credibility to the jury's attention, counsel's failure to request a specific instruction on accomplice testimony did not rise to the level of ineffective assistance of counsel. *Krist,* 804 F. 2d at 947.

**B. Claim # 2.  The *Miranda* waiver claim.**

Petitioner next claims that the trial court erred in admitting his custodial statement because he did not waive his Fifth Amendment right to remain silent.  The Michigan Court of Appeals rejected petitioner's claim:

> The record refutes defendant's claim that he did not waive his right to remain silent. Defendant's interview was recorded and a DVD copy of the interview is part of the record.  Sergeant Gary Miller read defendant his *Miranda* rights, explained them, and gave defendant the waiver form for him to review.  The officer orally asked defendant several times whether he understood his rights, and defendant stated that he did.  Defendant also stated that he did not wish to speak to an attorney and was not worried about answering questions.  Upon reading the waiver form, defendant did not wish to sign it and had some questions.  For example, defendant asked why he had to waive his rights just to answer questions, and whether he had to keep talking if he waived his rights.  In response to defendant's concerns, the detectives informed him that the police could not talk to him if he did not waive his rights, that they would leave if he chose not to waive his rights, that he could stop questioning at any time, and that he could choose to answer only select questions.  Defendant was also advised that he only had to state that he was "done talking" and they would leave.  Defendant was again asked if he understood his rights, and defendant stated that he did.  The detectives then asked defendant if they could speak with him and

7

ask him a few questions, and defendant unequivocally stated, "Yes." Given defendant's concerns, it was proper for the officers to seek clarification and ensure that defendant understood his rights, especially in light of the fact that defendant had waived his right to counsel and indicated that he would answer questions. Throughout the short interview, defendant appeared to understand the officers' questions, and never stopped the interview or stated that he had a problem understanding.

Although defendant did not sign the waiver form, he concedes that his signature on the form was not a requirement for a valid waiver of his Fifth Amendment rights. Further, contrary to what defendant suggests, there is no requirement that the officers apprise a defendant of the charges against him in order to effectuate a voluntary and knowing waiver. Viewing the totality of the circumstances, defendant did not unequivocally assert his right to remain silent and, accordingly, the trial court did not err in admitting his custodial statement.

*Hardeman,* Slip. Op. at * 5-6 (internal citation omitted).

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). A statement made by a criminal suspect during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused "in fact knowingly and voluntarily waived [*Miranda*] rights" when he made the statement. *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010)(quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). "The waiver inquiry 'has two distinct dimensions': [the] waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* at 382-83 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). However, "the Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574

(1987).  A prosecutor does not need to show that a defendant expressly waived his *Miranda* rights; indeed, an "implicit waiver" of the "right to remain silent" is sufficient to admit the defendant's statement into evidence. *Berghuis,* 560 U.S. at 384; *Butler,* 441 U.S. at 376.  Indeed, the Supreme Court's holding in the *Butler* case "made clear that a waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'"*Berghuis,* 560 U.S. at 384 (quoting *Butler,* 441 U.S., at 373).  Finally, "a court can infer a waiver of *Miranda* rights 'from the actions and words of the person interrogated.'" *Berghuis,* 560 U.S. at 387 (quoting *Butler,* 441 U.S., at 373).

        The record establishes that petitioner waived his right to remain silent.  The detectives read petitioner his *Miranda* rights, asked him if he understood them, and gave petitioner the waiver form to review.  Petitioner was asked by the detectives whether he understood these rights and he indicated that he did.  Petitioner stated he did not want to speak with an attorney and would answer the detectives' questions.  Although petitioner did not sign the waiver form, a written waiver is unnecessary to establish a knowing, intelligent and voluntary waiver of *Miranda* rights. *See United States v. Miggins*, 302 F. 3d 384, 397 (6th Cir. 2002); *see also United States v. Vaughn*, 496 F.2d 622, 622 (6th Cir.1974)("[R]efusal to sign a written waiver, standing alone, does not render inadmissible statements or evidence voluntarily given after full warnings.").  When petitioner asked the police why he had to waive his rights to answer questions and whether he had to keep talking once he waived his rights, the detectives explained to him that they would not talk to him if he chose not to waive his rights and that he could chose to stop the questioning at any time.  Petitioner was again asked if he understood his rights and he applied in the affirmative.  The detectives asked petitioner if they could ask him a few questions, and he replied "yes."  Petitioner never expressly

9

invoked his right to remain silent.  A suspect who wishes to invoke his right to remain silent must "do so unambiguously." *Berghuis,* 560 U.S. at 381.  Petitioner never informed the detectives that he wanted to remain silent or that he did not want to talk with them; thus, he never invoked his right to remain silent. *Id.* at 382.  It was thus not improper for the detectives to continue speaking to petitioner to determine whether he wished to remain silent.  Indeed, "when a suspect does not clearly invoke his right to remain silent or when the invocation is ambiguous, officers may follow up with clarifying questions." *Simpson v. Jackson*, 615 F. 3d 421, 430-31 (6th Cir.2010), *vacated on other grds sub. nom. Sheets v. Simpson,* 132 S.Ct. 1632, 182 (2012)(citing *Davis v. United States*, 512 U.S. 452, 461–62 (1994); *Berghuis, supra*).  Finally, the fact that petitioner may not have been informed of all the charges against him did not render his waiver invalid. *See Colorado v. Spring*, 479 U.S. at 577.  Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim # 3.  The jail attire claim.

Petitioner next contends that the trial court abused its discretion by admitting the videotape of his statement to the police because he was wearing a jail uniform in the videotape.  The Michigan Court of Appeals rejected petitioner's claim because the jury did not see petitioner dressed in jail attire at his trial. *Hardeman,* Slip. Op. at * 7.  The Michigan Court of Appeals also rejected petitioner's claim because it was not apparent from the videotape that petitioner was wearing jail garb. *Id.*

Although a criminal defendant cannot be compelled to stand trial before a jury while dressed in identifiable prison clothes, a defendant's failure to make an objection to the court as to being tried in such clothes, "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Estelle v. Williams,* 425 U.S. 501, 512-13 (1976).  Petitioner

10

was not forced to go to trial while dressed in jail attire.  Instead, the jury was shown a videotape in which petitioner was wearing an orange jumpsuit that was not readily identifiable as jail clothing. The Supreme Court has never held that the admission at trial of photographs or videotapes of a defendant in jail or prison clothing violates the federal constitution.  "Given the lack of holdings from the Supreme Court concerning the potentially prejudicial effect of admitting videotape evidence of an accused in jail clothing," the Michigan Court of Appeals did not unreasonably apply clearly established federal law in rejecting petitioner's claim. *See Atwood v. Schriro,* 489 F. Supp. 2d 982, 1053 (D. Ariz. 2007); *see also Anderson v. Secretary for Dept. of Corrections,* 462 F. 3d 1319, 1328-29 (11th Cir. 2006)(petitioner not entitled to certificate of appealability on claim that his due process rights violated by the jurors viewing a videotape in which they had a "single brief glimpse" of petitioner in prison garb).  Petitioner is not entitled to habeas relief on his third claim.

### D.  Claim # 4.  The prosecutorial misconduct claim.

Petitioner finally contends that he was deprived of a fair trial because of prosecutorial misconduct.  Respondent contends that petitioner's claims are procedurally defaulted because he failed to preserve the claims by objecting to the prosecutor's remarks at trial.  Petitioner claims that his trial counsel was ineffective for failing to object to the prosecutorial misconduct.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512

11

(6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45. Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).

Petitioner first claims that the prosecutor impermissibly vouched for petitioner's guilt when he permitted Sergeant Miller to impermissibly express an opinion as to petitioner's guilt.  In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime.  The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287.

The Sixth Circuit's holding in *Cooper* does not entitle petitioner to habeas relief.  First, Sergeant Miller was not presented as an expert witness at petitioner's trial.  Secondly, Sergeant Miller's testimony concerning his belief that the DNA evidence established that petitioner was the shooter was in response to the defense theory that the police had placed too much emphasis on the

12

results of the DNA testing in the absence of other evidence.  Third, the jury was instructed to judge a police officer's testimony by the same standard as the testimony of any other witness, which ameliorated any prejudice from this testimony. (Tr. 10/15/09, pp. 207-08). *See e.g. Norton v. Boynton,* No. 2011 WL 282433, * 8 (E.D. Mich. January 26, 2011).  Finally, "*Cooper* was decided prior to Congress' adoption of the AEDPA...so the *Cooper* court owed no deference to the state court decision on these issues." *Dorsey v. Banks*, 749 F. Supp. 2d 715, 738 (S.D. Ohio 2010).  The judge in *Dorsey* indicated that he had "been unable to locate a single case decided by the Sixth Circuit Court of Appeals, apart from *Cooper*, where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus." *Id.*  Petitioner is not entitled to habeas relief on this claim.

Petitioner further claims that the prosecutor argued facts not in evidence when he argued that DNA evidence was better than fingerprints, a videotape, or eyewitness testimony.  It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

As the Michigan Court of Appeals noted in rejecting petitioner's claim, *See Hardeman,* Slip. Op. at * 9, the prosecutor's remark was in response to defense counsel's argument that there was no "physical evidence" that petitioner was at the crime scene at the time of the shooting and that the subsequent DNA testing was inconclusive of petitioner's identity as the shooter or that the shooter could have been one of petitioner's relatives.  The Michigan Court of Appeals further noted that an expert testified at trial about mitochondrial DNA testing and her report was admitted into

13

evidence for the jury to consider.  There was evidence that mitochondrial DNA testing could exclude a substantial portion of the population and that hairs from the crime scene were a match to petitioner or one of his maternal relatives.  During the challenged remarks, the prosecutor urged the jury to consider the DNA test results in conjunction with the testimony that petitioner was identified as being at the motel at the time of the shooting.  Because there was at least some factual support on the record for the prosecutor's argument, the prosecutor's remarks did not deprive petitioner of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).  Moreover, any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr. 10/15/09, p. 201). *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).  Petitioner was not denied a fair trial because of prosecutorial misconduct.

As a related claim, petitioner contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct.  To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).  Petitioner is not entitled to habeas relief on his fourth claim.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a

14

certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be debatable. *See Strayhorn v. Booker,* 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010).  The Court will also deny petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V. ORDER

Accordingly, the Petition for Writ of Habeas Corpus is **DENIED.**

The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

S/Lawrence P. Zatkoff
**HON. LAWRENCE P. ZATKOFF**
**UNITED STATES DISTRICT JUDGE**

**Dated: June 10, 2014**